THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Lawrence Brayboy, Employee, Respondent,
 v.
 WorkForce,
 Employer and American Home Assurance, Carrier, Defendants,
 Of Whom
 WorkForce, Employer, is the Appellant.
 
 
 

Appeal From Charleston County
 R. Markley Dennis, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2008-UP-199
Heard February 5, 2008  Filed March 20,
 2008
REVERSED

 
 
 
 Kirsten Leslie Barr, of Mount Pleasant, for Appellant.
 John S. Nichols, of Columbia and Matt Jackson, of North Charleston, for Respondent.
 
 
 

PER CURIAM:  WorkForce
 appeals the circuit courts decision affirming the Appellate Panel of the
 Workers Compensation Commissions order awarding benefits to Lawrence
 Brayboy.  We reverse.
FACTS
In 1970, Brayboy joined the Navy and
 worked as a deck hand.  While onboard a naval ship, Brayboy fell, slid on the
 deck, and hit a rail.  Following the fall, Brayboys back was sore for a few
 weeks.  Doctors took an x-ray and prescribed acetaminophen.  Brayboy received
 no other treatment.  Subsequently, Navy doctors diagnosed Brayboy as having a
 missing piece of bone, which Brayboy described as a birth deformity.  As a
 result of this accident, Brayboy received approximately $85 a month in benefits
 for thirty years to date.
In 1996, Brayboy was involved in a work-related accident while
 employed by McCrory Construction (McCrory).  While Brayboy was in a thirty to
 forty foot hole, the sides collapsed.  As a result of this accident, Brayboy
 injured his middle to lower back and right ankle.   After filing a claim for
 benefits under the South Carolina Workers Compensation Act (the Act), Brayboy received
 approximately $8,500 to $8,700 as a settlement.  Further, Brayboy received a
 five percent impairment rating for both his back and his ankle.  Brayboy
 testified his claim with McCrory was the only workers compensation claim he
 had ever filed.
Following his employment with the Navy and McCrory, WorkForce
 hired Brayboy.  As part of the pre-employment process, WorkForce required
 Brayboy to fill out an application.  In the application, Brayboy answered questions
 regarding his medical history, whether he previously filed for workers
 compensation claims, and whether he had any current disabilities.  In answering
 these questions, Brayboy represented he had never been treated for any disease
 or condition.  During the application process, Brayboy also signed the
 following statement:

 If I do not give accurate and truthful information in this
 Medical History Questionnaire, which forms the second and final part of my
 employment agreement, the entire employment shall be considered null and void. 
 
 MISREPRESENTATIONS AS TO PREEXISTING PHYSICAL OR MENTAL
 CONDITIONS MAY CAUSE FORFEITURE OF YOUR WORKERS COMPENSATION BENEFITS.

On April 18, 2003, while at work, Brayboy was injured while pulling
 up a chain-link fence.  Brayboy believed he had pulled a major muscle in his
 lower back.  After informing his supervisor, Brayboy sought medical treatment. 
 As a result of this accident, Brayboy has impaired mobility and walks with a
 crutch.  He experiences pain in his legs and lower back, and he takes medication
 for the pain.
Brayboy notified his employer and timely filed a workers
 compensation claim.  Brayboys misrepresentations in his job application became
 the basis for WorkForces denial of his entitlement to compensation. 
 Specifically, WorkForce argued Brayboys misleading answers in its pre-employment
 questionnaire vitiated the parties employment relationship and
 precluded Brayboy from receiving benefits under the Act.  The single commissioner
 presided over a hearing and concluded Brayboy was a WorkForce employee when he
 sustained his back injury.  WorkForce appealed the single commissioners
 findings to the Appellate Panel which affirmed the order of the single commissioner.  
 Thereafter, WorkForce appealed the order of the Appellate Panel to the circuit
 court, which affirmed the Appellate Panels order.  This appeal followed. 
 
STANDARD OF REVIEW
The
 employee relationship is a jurisdictional issue for the purposes of workers
 compensation benefits and thus, our review is governed by the preponderance of
 the evidence standard.  Vines v. Champion Bldg. Products, 315 S.C. 13,
 16, 431 S.E.2d 585, 586 (1993).
LAW/ANALYSIS
The
 sole issue presented on appeal is whether the circuit court erred as a matter
 of law in summarily concluding Brayboy was a WorkForce employee. For the
 reasons set forth below, we find Brayboys misrepresentations vitiated the parties employment relationship and precluded Brayboy from
 receiving benefits under the Act.  Accordingly,
 we reverse.
In Cooper v. McDevitt
 & Street Co., 260 S.C. 463, 468,
 196 S.E.2d 833, 835 (1973), the Supreme Court of South Carolina adopted a three-part
 test for determining when a
 false statement in an employment application will bar benefits.  This test, as explained in Givens v. Steel Structures, Inc., provides the employment relationship will:

 be vitiated where false statements were made on a job application
 in the presence of three factors: (1) knowing and wilful nature of the false
 representation as to physical condition;
 (2) reliance by the employer upon the false representation as a substantial
 factor in the hiring; (3) causal connection between the false
 representation and the injury.  

279
 S.C. 12, 13-14, 301 S.E.2d 545, 546-7 (1983).  We note the test in Cooper is an and test, meaning an employer must prove all three of its factors
 before an employee is barred from receiving workers compensation benefits. 
 Therefore, if an employer fails to prove any of these factors, a claimant will
 still be considered an employee under the Act.  See Vines, 315
 S.C. at 16, 431 S.E.2d at 586 (All factors must be present for the employer to
 avoid paying benefits.).  
1)  Knowing and Willful False Representation
 of a Physical Condition
Under the first
 prong of Cooper, not only must an employee have made a misrepresentation
 of a physical condition on an employment application, this falsity must be
 known and the misrepresentation must have been willfully made.  
Undoubtedly, Brayboy
 made numerous misrepresentations on his employment application.  Specifically,
 Brayboy checked no in the section of the application questioning whether he
 had ever been treated for foot injuries, spinal injuries, or backaches. 
 Additionally, Brayboy indicated he had not experienced [o]ne or more back
 injuries or a disease process of the back resulting in a disability.  Brayboy
 also denied ever filing a workers compensation claim.  However, the record
 shows Brayboy had experienced an injury while working for the Navy, for which
 he has received thirty years of benefits.  Brayboy was also involved in a
 work-related accident while employed with McCrory.  As a result of this
 accident, he sought recovery under the Act and received a settlement of approximately $8,500 to $8,700 and a five percent impairment
 rating for both his back and his ankle.  
Given the record
 before us, we are convinced that Brayboy knew the falsity of his statements and
 willfully made the misrepresentations.   
2.  Employers Reliance Upon the False Representation as a
 Substantial Factor in Hiring
Under
 the second prong of Cooper, WorkForce bears the burden of proving it
 relied on Brayboys misrepresentations in its decision to hire him.    
Brian Ingles, a
 sales manager for WorkForce, testified WorkForce requires new applicants to
 fill out employment and medical history questionnaires to protect the applicant
 and the company.  Ingles stated WorkForce tries not to put workers in
 potentially harmful situations by carefully taking into consideration an applicants
 previous injuries.   Additionally, Ingles claimed information provided by an
 applicant regarding a previous injury would be a substantial factor in the
 hiring process.  Ingles also testified Brayboy was hired as a trim carpenter,
 and the job he was hired on really [wasnt] that physically demanding in
 nature.  Finally, Ingles admitted there was a possibility Brayboy would have
 been eligible to work as a trim carpenter had he honestly filled out the employment
 application.  
Christopher Lee,
 a previous WorkForce employee, testified he had reviewed Brayboys employment
 application and medical history questionnaire.  Lee stated he had relied upon
 Brayboys statements in deciding to hire Brayboy and claimed the
 representations were a substantial factor in his hiring decision.  Lee
 testified WorkForce uses the questionnaires: To protect us as employers and to
 protect the person going to work, both, so that we know what a person is
 capable of doing, so we dont put them into a situation where they could hurt
 themselves.    Lee also stated he would have taken into account Brayboys
 prior injuries in determining what type of work to give Brayboy.  When asked
 whether knowledge of Brayboys previous injuries would have prevented him from
 hiring Brayboy, Lee stated: It wouldnt prevent me from hiring him.  It would
 just lead to further analysis or lead to possibly finding something that was
 more suited to his capabilities.  
Given the
 testimony of these two witnesses, we are convinced that, although it may have
 still hired Brayboy even if it knew of his previous injuries, Workforce relied
 on his false representations in assigning his job duties. Therefore, the second
 prong of Cooper is satisfied.  See  Jones v. Georgia-Pacific
 Corp., 355 S.C. 413, 418-19, 586 S.E.2d 111,114 (2003) (holding the
 second prong of Cooper was satisfied where Respondents Human Resource Manager
 testified that the fact that Claimant had prior physical ailments would not
 have barred her from working for Respondent. Rather, Respondent would have attempted to find a job for Claimant that would not subject a pre-existing physical
 impairment to further deterioration.).  
3.  Causal Connection Between the False Representation and the Injury
Under the third
 prong of Cooper, WorkForce must prove a causal connection existed between
 Brayboys false representations and the injury sustained. 
WorkForce
 argues the issue of a causal connection is undisputed because the Appellate
 Panel found, [Brayboy] had a longstanding lower back pain, which was exacerbated
 after his injury.  However, the employee relationship is a jurisdictional issue. 
 Accordingly, we must conduct our own review of the record. 
Brayboy
 sought and received an increase in his Department of Veterans Affairs
 impairment rating from twenty percent to forty percent due to an injury on
 April 18, 2003 that further aggravated [his] service injury.  Furthermore,
 Brayboys patients progress notes from the Department of Veterans Affairs state
 that he suffered from longstanding lower back pain which was exacerbated
 after an injury.  Given this evidence, we find a causal connection has been
 established, satisfying the third prong of Cooper.  See Givens
 v. Steel Structures, Inc., 279 S.C. 12, 14, 301 S.E.2d 545, 547 (1983)
 (Expert medical testimony clearly indicated that claimants condition was one
 reflecting the cumulative effect of successive injuries. The only reasonable
 inference to be drawn from th[e] record was that a causal connection had been
 established sufficient for the purposes of Cooper.).
CONCLUSION
For the foregoing
 reasons, we find WorkForce has proven all three prongs of the Cooper test.  Accordingly, the order of the trial court is 
 
REVERSED.
ANDERSON, SHORT,
 and WILLIAMS JJ., concur.